**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
(Tampa Division)
Case No.: 8:25-cv-02992-CEH-AAS

**CHRISTIAN ZIEGLER &**
**BRIDGET ZIEGLER,**

Plaintiffs,
v.

**CITY OF SARASOTA,**
**ANGELA COX, &**
**MARIA LLOVIO,**

Defendants.
_________________________________/

# PLAINTIFFS' RESPONSE IN OPPOSITION TO "EMERGENCY" MOTION TO PRESERVE EVIDENCE

Plaintiffs Christian Ziegler and Bridget Ziegler file their response in opposition to the City of Sarasota's emergency motion to preserve evidence. D.E. 17.

## *Introduction*

This is a 42 U.S.C. § 1983 action arising from Defendants' illegal search and seizure of Plaintiff Christian Ziegler's cell phone. It is nominally related to a lawsuit filed in the Sarasota Circuit Court that is now on appeal to the Second DCA. *See Ziegler v. City of Sarasota*, 2024CA001409NC. In the state

action, Plaintiffs sued the City for declaratory and injunctive relief to prevent the City from releasing *the entire* contents of Mr. Ziegler's illegally seized cell phone in response to multiple public records requests, although the intervening media parties in that action would later limit the scope of the litigation to the small subset of documents constituting what is known as "the investigative file."

On July 1, 2024, the trial court entered a detailed final judgment in favor of Plaintiffs, *see* D.E. 17-1, finding that the City of Sarasota violated Mr. Ziegler's constitutional rights by obtaining unlawful warrants. As an additional remedy, the state trial court ordered the destruction of all copies of the contents of the cell phone, which it stayed pending appellate review. *Id.* On July 31, 2024, the intervening media defendants appealed the July 1, 2024 final judgment to the Second District. *See The Florida Center for Government Accountability v. Ziegler*, 2D24-1806. Importantly, neither the City nor the State Attorney's Office, which was a co-defendant in the state court action, appealed the final judgment and is not participating in the appeal.

The City's motion is woefully inadequate. The City attempts to portray the current situation as exigent and needing this Court's immediate attention because important evidence is at risk of being destroyed. But that is simply

not true. There is no imminent destruction of evidence and the evidence they are seeking to preserve is not relevant to the issues raised by Plaintiffs. Plaintiffs' claims revolve around the Defendants' conduct in *obtaining* the three search warrants, not the information seized as a result of the illegal search. The data taken from Mr. Ziegler's cell phone is not relevant to the City's conduct in *obtaining* the three warrants and should be destroyed in the event the Second DCA affirms the final judgment.

Put another way, the City is turning Fourth Amendment jurisprudence upside down in a bad faith attempt to obtain irrelevant and highly sensitive documents. It claims "the City will be placed in the untenable position of defending a federal civil rights action concerning the contents and scope of a search without possession of the seized materials and without the ability to account for or describe them." *See* Motion, p. 5–6. Whether a search warrant was unlawful is not – and is ***never*** – dependent upon the results of the search. *See Bumper v. North Carolina*, 391 U.S. 543, 548, n.10, 88 S. Ct. 1788, 1791, 20 L. Ed. 2d 797 (1968) ("Any idea that a search can be justified by what it turns up was long ago rejected in our constitutional jurisprudence. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light."); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S.

560, 567, n.11, 91 S. Ct. 1031, 1036, 28 L. Ed. 2d 306 (1971) ("Of course, the discoveries of an illegal search cannot be used to validate the probable-cause judgment upon which the legality of the search depends."); *Byars v. United States*, 273 U.S. 28, 29–30, 47 S. Ct. 248, 248–49, 71 L. Ed. 520 (1927) ("Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed.").

What matters is what information was used to *obtain* the search warrant, not the items or information obtained as a result of the search. The City's suggestion that it cannot defend this lawsuit concerning illegal search warrants without having access to the data on Mr. Ziegler's phone that was obtained as a consequence of the illegal search warrants is frivolous.[1]

---

[1] The only contents of the phone that *might* be relevant for the Plaintiffs' claims (for both liability and damages) are those contents that were *already* made public by the City prior to the state court issuing a temporary injunction upon the filing of the state court action, but the already public contents of the phone are not subject to the Final Judgment's

Moreover, Defendants Cox and Llovio (along with their supervisor, Sgt. Riffe, and others) gave substantial testimony on this issue in the state court action and the Final Judgment makes definitive findings of fact concerning the issues the City is, apparently, claiming it wants to relitigate. (The City was a party to the state action and has all material from that case, including the publicly accessible entire record on appeal). For example, the City alleges:

> Moreover, Plaintiffs' § 1983 claims challenge the search warrants as overbroad. That allegation necessarily places at issue the manner of the searches, including precisely what portions of the cell phone and accounts were examined, what data was extracted, what data was seized, and what data was not seized or incorporated into the City's investigative file. To defend against an overbreadth claim, the defendant officers must be able to explain with specificity what they did and did not do during execution of the warrants.

*See* Motion, p. 7. Respectfully, the City is dangerously close to violating its duty of candor to the tribunal. The City was a defendant in the state court action and its officers (Cox, Llovio and Sgt. Riffe) were all represented by the City's counsel when they testified extensively about the very things the City

---

destruction order. Anything already public remains public; it's the non-public contents of the phone (which constitutes a massive quantum of data) that are subject to the destruction order. The massive quantum of data that has not been made public is not relevant to anything, and certainly wholly irrelevant to whether the City violated the Constitution in obtaining the search warrant and executing the search.

now claims it needs to know. The City needs to know what *the City* did and did not do when it obtained and executed the warrants? Fine, it can ask itself or read its own testimony – Christian's cell phone does not contain the answers.

But the City – quite literally – knows all of this because its own officers testified to all of this. Their testimony is public record and it was all incorporated into the trial court's findings of fact. The City's allegation that it needs – on an emergency basis – the contents of Mr. Ziegler's illegally seized phone to uncover information about the search it unlawfully conducted is deceptive and misleading because its own witnesses know this information and already publicly testified about it.

Finally – the City claims "without retention of the electronic data, the City and its officers will be unable to establish even the most basic facts about the searches." *Id.* (emphasis added). This is demonstrably false and frivolous.

//

//

*Argument*

**This is no Emergency**

There are EMERGENCIES, and then there are emergencies – this is the latter. "An emergency presents a concrete risk of immediate and irreparable harm." *Hytto pte. Ltd. v. Olivares*, 2:25-cv-576-KCD-NPM, 2025 WL 2829541, at *1 (M.D. Fla. Oct. 6, 2025). Examples of true emergencies "might include the imminent removal of someone's child from the country, imminent action that would destroy the usefulness of a parcel of land, the imminent destruction of a one-of-a-kind family heirloom, or denying someone access to the ballot on election day." *Id.*

Here, the City's motion claims an emergency exists because ESI could potentially be destroyed in the near future and requests a ruling by January 28, 2026 (not coincidentally, the date of the oral argument in the Second District). But no emergency actually exists. Although the Second District's hearing is January 28, 2026, no opinion will be issued that day. It may take months for an opinion, a potential rehearing motion, potential Florida Supreme Court appeal, etc. Thus, there is no imminent need for the requested relief. Such a ruling on this Emergency Motion can, and at a

minimum should, be deferred until the City's compliance with the trial court's destruction order is imminent.

This City knew (based on settlement conversions between counsel) it was facing a § 1983 action well before this lawsuit was filed on October 31, 2025. The City waited until the eve of oral argument (an argument that does not include the City because it declined to appeal) to file this motion and is asking the Court for expedited briefing, an expedited hearing, and an expedited ruling all before the January 28 oral argument (for which undersigned counsel is busy prepping). This is an "emergency" entirely of its own creation.

Further, the *relief* requested by the City in its Emergency Motion is perplexing to stay the least. The City is the sole entity currently in possession of the wrongfully seized ESI. Is the City asking this Court to direct *it* to preserve evidence? Surely the City does not need a court order directing itself to do something. Or is the City asking this Court to order the Second District to preserve evidence or otherwise rule a certain way? The City cannot ask this Court to relieve *it* of its court-ordered duty to destroy the seized ESI because, as explained below, that would run afoul of the *Rooker-*

*Feldman* doctrine. Put simpler, the City is indeed asking this Court to serve as a super-appellate court to direct the Second District to act.

**The *Rooker-Feldman* Doctrine Bars the Relief**

The City obviously recognizes the *Rooker-Feldman* problem because it preemptively raised it in its Motion. The *Rooker-Feldman* doctrine precludes district courts "from exercising appellate jurisdiction over final state-court judgments." *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009). A district court's *Rooker-Feldman* analysis focuses on "whether the claims before the district court were 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (quoting *Nicholson*, 558 F.3d at 1268). The *Rooker-Feldman* doctrine applies if a claim "was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." *Target Media Partners v. Specialty Marketing Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). A claim is considered "actually adjudicated" if the challenging party had "a reasonable opportunity to raise his federal claim in [the] state proceedings." *Casale*, 558

F.3d at 1260. For claims to be "inextricably intertwined," "the question posed to the federal court must be intertwined with the state court judgment not only to the extent that it involves the state court proceedings but also to the extent that a determination reached by the state court would have to be relitigated in federal court." *Target Media Partners*, 881 F.3d at 1287. The fact that the City calls their motion an emergency to preserve evidence does not shield it from a *Rooker-Feldman* analysis. *See May v. Morgan Cnty. Ga.*, 878 F. 3d 1001, 1005 (11th Cir. 2017) ("[A] state court loser cannot avoid Rooker-Feldman's bar by cleverly cloaking her pleadings in the cloth of a different claim.").

Here, both prongs of the Eleventh Circuit's *Rooker-Feldman* test require the Court to deny the motion. First, the City cannot seriously argue that it did not have an opportunity to contest either the constitutionality of the search warrants or the destruction of the ESI seized from Mr. Ziegler's cell phone. From the beginning of the state court litigation, Plaintiffs made it clear that they intended to seek destruction of the seized ESI, as their Amended Complaint specifically requested the trial court "order the permanent destruction of all documents, including those stored electronically, not subject to disclosure[.]" The City and the SAO pled and

defended the constitutionality of the search warrants in the first affirmative defense of their respective Answers.  The constitutionality of the search warrants was at issue in the state trial court and was foundational for the trial court's lengthy final judgment against the City. And despite an incredibly detailed, adverse final judgment against the City, the City never challenged the court's ruling and, wisely, declined to appeal.

If the state court judgment is affirmed, as it should be, then the Zieglers' successful constitutional challenge to the search warrants and destruction of the seized ESI are final and the City is collaterally estopped from claiming otherwise. *See* Art. IV, § 1, U.S. Constitution; 28 U.S.C. § 1738; *Christo v. Padgett*, 223 F.3d 1324, *1339-40 (11th Cir. 2000) (affirming dismissal due to issue preclusion); *Cotton States Mut. Ins. Co. v. Anderson*, 749 F. 2d 663, 666 (11th Cir. 1984) (affirming use of collateral estoppel in federal court where the constitutional issue was decided by the Georgia state courts); *Merced-Torres v. Merck & Co.*, 393 F. Supp. 2d 1299, 1302 (M.D. Fla. 2005) ("A party invokes collateral estoppel when the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was

actually litigated, and the determination of the issue was necessary to the prior action.") (internal quotations omitted).[2]

Second, the issue of "preserving" the ESI seized by the SPD is inextricably intertwined with the state court's final judgment. Here, the City is asking this Court to issue an order that would (somehow) overrule or at least modify the state court's final judgment to allow for the preservation of the seized ESI instead of its destruction, *i.e.*, the state court would be ordering documents destroyed while the federal court is ordering the very same documents to be preserved.

Modifying a portion of the state court's final judgment would undoubtedly require this Court to address the legality of the searches and the destruction of the seized ESI—two issues the state court already ruled on—and thus force the parties here to relitigate issues the same parties raised there. The City lost in the state trial court and chose not to appeal. It is estopped from asking the federal district court for a mulligan.

---

2 The City claims the constitutionality of the search and seizure is at issue in this lawsuit. *See* D.E. 17, Motion, ¶¶ 1, 4. The City is mistaken because it is collaterally estopped from relitigating the issue here.

Accordingly, the City's motion runs afoul of the *Rooker-Feldman* doctrine and must be denied. *See Velazquez v. S. Fla. Fed. Credit Union*, 546 Fed. App'x 854, 858–59 (11th Cir. 2013) (holding district court did not have jurisdiction to grant plaintiff's request because it was inextricably intertwined with related state court final judgment); *May v. Capote*, 149 Fed. App'x 913, 917 (11th Cir. 2005) (holding issue presented before the district court was inextricably intertwined with a state court judgment because the district court would have been required to reverse state court decision to address issue raised by plaintiff).

**The Evidence Sought to be Preserved is Not Relevant**

Generally, district courts have the power to "issue preservation orders as part of their inherent authority to manage its own proceedings." *Arkin v. Gracey-Danna, Inc.*, 8:16-cv-1717-T-35AAS, 2016 WL 3959611, at *1 (M.D. Fla. July 22, 2016). Courts in the Eleventh Circuit utilize one of two tests when ruling on a motion to preserve evidence:

> Some courts employ a two-prong test that requires the proponent to demonstrate that the order is necessary and not unduly burdensome. Other courts employ a three-factor balancing test, which considers: (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to

> result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Id.* (internal citations omitted). "The difference between these two tests lies in what the moving party must show with respect to the content of the evidence that is in danger of being destroyed." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006). Regardless of what test this Court applies, the City fails to establish why preservation of the evidence is necessary.

Here, there is no concern for the continuing existence of the evidence the City seeks to preserve because the ESI is not relevant to any claim or issue in this case. The City correctly states that this case is a federal civil rights case concerning the execution of three unlawful search warrants. But the City is incorrect that the content of the ESI seized from Mr. Ziegler is vital to this case. As indicated above, the ESI is entirely irrelevant to this lawsuit – the results of the unlawful search have no bearing on the lawfulness of the search itself.

Further, the evidence is not relevant because if the Second DCA affirms the final judgment, then the City is estopped from relitigating the

constitutionality of the warrants. A party can claim the benefit of issue preclusion if:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998).

Here, all four elements are issue preclusion are satisfied. First, the constitutionality of the search warrants was raised in the state court case and has been raised in this case. Second, the constitutionality of the search warrants was actually litigated because Plaintiffs alleged in their Amended Complaint that the search warrants violated Mr. Ziegler's constitutional rights while the City (and the State Attorney) pled as an affirmative defense that the search warrants were lawful. Third, the state court's constitutionality ruling was essential to its final judgment, as the illegality of the search warrants was used as the primary basis for finding the seized ESI was not a public record. Finally, the City had a full and fair opportunity to litigate the constitutionality of the search warrants, as it was actively involved in the state court litigation.

Neither the City nor the State Attorney's Office appealed that adverse order. The state court action was appealed by intervening media outlets, but they have not challenged the state court's findings regarding the City's constitutional violations. Thus, the findings of fact and conclusions of law in the state court final judgment are binding on this Court and the City is estopped from relitigating those issues here. *See* Art. IV, § 1, U.S. Constitution; 28 U.S.C. § 1738; *Christo*, 223 F.3d at 1339-40 (affirming dismissal due to issue preclusion); *Anderson*, 749 F. 2d at 666 (affirming use of collateral estoppel in federal court where the constitutional issue was decided by the Georgia state courts).

The City's concerns are highly speculative and are being made without any supporting factual basis – in fact the City has all the evidence it needs from its own witnesses and their prior testimony (all of which is matter of public record) and, therefore, the City's motion should be denied. *See Lewis v. Campbell*, Case No. 5:25-cv-209-JSS-PRL, 2025 WL 1786404, at *2 (M.D. Fla. June 27, 2025) (denying motion to preserve evidence because the motion "d[id] not demonstrate a risk that existing and relevant evidence [was] in danger of being destroyed or was in danger of being destroyed at the time he filed the instant motion"); *Wheeler v. Aliceson*, No. 1:12-cv-00860-LJO-MJS

(PC), 2015 WL 3507369, at *6 (E.D. Cal. June 3, 2015) (denying motion to preserve evidence because "[g]eneralized, unsupported concerns simply do not suffice."). If the City wants to know how it obtained the search warrants and how the search was conducted, it simply has to ask *itself* or review *its own* testimony. Interfering with a pending state court action is not the solution.[3]

***Conclusion***

The City's Emergency Motion is not an emergency, is unsupported by evidence, is fatally undermined by *the City's own testimony* in the state proceeding (which the City has conveniently omitted in its Motion), is premised upon a misleading factual basis and entirely backwards Fourth Amendment jurisprudence and requires this Court to overrule a state court judgment. It must be denied.

Respectfully submitted,

Matthew Sarelson, Esq.

[3] The state court record on appeal – for which this Court should take judicial notice of pursuant to F.R.E. 201 – is approximately 2,000 pages and can be filed, in toto, should the Court request it. Perhaps one way to resolve the pending Emergency Motion is to deny the motion without prejudice so that the City can make a *particularized* showing of need in light of the City's own prior testimony.

Florida Bar 888281
Zachary Stoner, Esq.
Florida Bar 1032816
**DHILLON LAW GROUP INC.**
Attorneys for Plaintiffs
1601 Forum Place, Suite 202
West Palm Beach, Florida 33401
305.773.1952
msarelson@dhillonlaw.com
zstoner@dhillonlaw.com

## Certificate of Conferral

Pursuant to Local Rule 3.01(g), I certify that on January 14, 2026, I spoke with the City's lead attorney via telephone to discuss the motion and the Plaintiffs' response but no resolution was reached.

Matthew Sarelson, Esq.