**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**CHRISTIAN ZIEGLER &**
**BRIDGET ZIEGLER,**

Case No.: 8:25-cv-02992-CEH-AAS

Plaintiffs,

v.

**CITY OF SARASOTA,**
**ANGELA COX,**
**MARIA LLOVIO, & ED BRODSKY,**
**in his official capacity,**

Defendants.
_________________________________/

**COMBINED RESPONSE TO DEFENDANTS ANGELA COX & MARIA LLOVIO'S MOTIONS TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Christian Ziegler files his combined response to Defendants Angela Cox [D.E. 43] and Maria Lllovio's [D.E. 41] Motions to Dismiss Plaintiffs' Amended Complaint.[1]

***Introduction***

Defendants Cox and Llovio (collectively "Detectives") were the lead detectives investigating Christian Ziegler for a crime he did not commit. D.E. 35, Am. Compl.

---

[1] The Detectives make nearly identical arguments. Defendant Cox's motion, however, includes many nonsensical statements. In the opening paragraph on page 4, for example, she argues: "The question is whether the Defendant had **arguable probable cause** to arrest and search the Plaintiff." (emphasis in original). Christian was neither arrested nor searched. In the next paragraph, she argues she had "at a very basic level arguable probable cause to investigate the Plaintiff, but had sufficient probable cause to stop, frisk, or question the Plaintiff." Christian is unaware of any "probable cause" requirement to "investigate." Moreover, Christian was never stopped and frisked. Cox's motion also haphazardly uses *italics*, underline and **bold** throughout, making reading the motion challenging.

at ¶ 61. They applied for and obtained two patently unconstitutional search warrants. *Id*. at ¶¶ 29, 46. Both the search and the seizure supported by the two warrants were facially overbroad. *Id.* After the first warrant – the cell phone warrant – was signed, but before it was executed, both Cox and Llovio viewed a video that they (and their supervisor, non-party Sgt. Riffe) acknowledged was exculpatory. *Id.* at ¶¶ 36–38. Viewing and acknowledging the exculpatory video should have ended the entire investigation. *Id*. More obviously, the exculpatory completely undermined the signed but not yet executed cell phone search warrant. *Id*. But the facts were irrelevant in Cox and Llovio's quest to get Christian. Simply put, Cox and Llovio continued investigating Christian Ziegler for a crime that they knew he did not commit. *Id*. And in the process, they destroyed him and his family. *Id.* at ¶¶ 65–69.

***Standard of Review***

It is axiomatic that the Court must accept Christian's well-pled allegations when ruling on a motion to dismiss. *See, e.g.*, *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999). But this case is a bit different than most because a state trial court already made detailed findings of fact and conclusions of law, *see* D.E. 35-4, that cannot be relitigated here. *See Merced-Torres v. Merck & Co.*, 393 F. Supp. 2d 1299, 1302 (M.D. Fla. 2005) ("A party invokes collateral estoppel when the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary to the prior

action.") (internal quotations omitted). Detectives Cox and Llovio are estopped from arguing that the search warrants were lawful. *Id*.

Qualified immunity is typically raised at summary judgment, but it can be raised pursuant to Rule 12(b)(6). *See Corbitt v. Vickers*, 929 F.3d 1034, 1311 (11th Cir. 2019). At the motion to dismiss stage, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010). "To defeat qualified immunity on a motion to dismiss, the operative complaint must plausibly plead that the defendant violated the plaintiff's federal rights and those rights were clearly established." *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024); *see also St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (dismissal on qualified immunity grounds only proper if the "complaint fails to allege the violation of a clearly established constitutional right").

Once an officer establishes she was acting within her discretionary authority – which the Plaintiffs do not contest here – the burden of persuasion shifts to the plaintiff to show that the officer is not entitled to qualified immunity. *See St. George*, 285 F.3d at 1337; *Maughon v. City of Covington*, 505 F. App'x 818, 821 (11th Cir. 2013).[2] To

[2] The Eleventh, Fifth, Sixth, Seventh, and Tenth Circuits place the burden on a plaintiff to overcome qualified immunity. *See, e.g.*, *id.; Craig v. Martin*, 49 F.4th 404 (5th Cir. 2022); *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025); *Erwin v. Daley*, 92 F.3d 521 (7th Cir. 1996); *Henry v. Purnell*, 501 F.3d 374 (10th Cir. 2007). But this is wrong. "Qualified immunity is an affirmative defense, and thus the burden of proof is on defendants-appellants." *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001); *see also Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (same); *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (same); *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (same); *Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011) (same but requiring the plaintiff to prove the law is clearly established); *Andrich*

overcome qualified immunity, the plaintiff must prove: (1) the defendants violated her constitutional rights, and (2) the right that defendants violated was clearly established at the time of the violation. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007). The district court may address either prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

***Argument***

**I. <u>Cox and Llovio Violated Christian's Fourth Amendment Rights</u>**

A. <u>The fact that Judge Krug Signed the Warrants is Irrelevant</u>

First, the Detectives make a preliminary argument that Judge Krug's approval of the warrants creates a strong presumption of reasonableness. They cite only *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) for the unremarkable holding that "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." There's a significant problem for Cox and Llovio – to wit, the facts.

When they sought the cell phone warrant, they omitted any reference to a potentially exculpatory video. Am. Compl. ¶ 32. But even worse, after the warrant was signed but before it was executed, they viewed the video *and* concluded it was exculpatory. *Id.* at ¶¶ 37–38. The Detectives accurately cite to one sentence in

---

*v. Kostas*, 470 F. Supp. 3d 1048, 1061 n.5 (D. Ariz. 2020) (acknowledging an internal split within the Ninth Circuit which has held on two separate occasions that the burden is completely on the defendant and that it is the plaintiff's burden to prove the violated constitutional right was clearly established).

*Messerschmidt*, but fail to acknowledge the rest of the same paragraph. A magistrate's signature "does not end the inquiry into objective reasonableness." 565 U.S. at 547. You can sue when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* The Detectives were advised on the afternoon of November 1 that Christian possessed an exculpatory video. Am. Compl. at ¶ 28. After being advised, they hastily obtained an unlawful general warrant late in the evening for Christian's phone without viewing the video and without mentioning it to judge. *Id.* at ¶¶ 29–35 Why? Because they had a meeting with Christian scheduled for 8am the next morning where they would be viewing the video. *Id.* at ¶¶ 28, 36. They wanted to seize and search Christian's entire phone and they were motivated by political bias. *Id.* at ¶¶ 29, 53.

Importantly, they viewed the video and concluded it was exculpatory and declined Christian's offer to provide SPD with a copy of the video *before* executing the warrant. *Id.* at ¶¶ 37–38. The state trial court already concluded that the warrant was facially invalid from the outset, but even assuming it was a lawful warrant when signed, any probable cause evaporated instantly when these Detectives watched a video entirely inconsistent with the accusation, *i.e.*, not an assault. *Id.*

The Detectives had an obligation to return to the magistrate because they had actual knowledge of new facts that negated probable cause. *See, e.g., United States v. Spencer*, 530 F. 3d 1003, 1008 (D.C. Cir. 2008) ("It is true that when officers learn of new *facts* that negate probable cause, they may not rely on an earlier-issued warrant

but instead must return to the magistrate…") (Kavanaugh, J.); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (vacating a conviction and rejecting any good faith defense when law enforcement withheld additional facts that undermined the initial warrant and holding "the officers had a duty to provide the magistrate judge with any information which would undercut the warrant's validity. The officers could not simply rest on a warrant they had already received when this information came to light."); *United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2nd Cir. 1984) ("Certain restrictions are placed on the execution of search warrants to ensure that probable cause, as well as the veracity of the information in the affidavit, exists when the warrant is executed…. Thus, when a definite and material change *has* occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists. Therefore, the magistrate mutes be made aware of any material new or correcting information."). This was no mere "twist and turn of the investigation." *Washington v. Howard*, 25 F. 4th 891, 906 (11th Cir. 2022). "A corollary of this principle is that the facts relied upon in the government's application must also support an inference that evidence of a crime will be found in the place to be searched at the <u>time</u> of the search – otherwise known as the requirement that the warrant not be stale." *Google LLC v. United States*, 2025 WL 778150, *7 (D.D.C. Feb. 25, 2025) (emphasis in original).

Here, the newly discovered fact is a video the Detectives acknowledge exonerate Christian of the sexual battery accusation.[3] Put another way, the Detectives knew they would never get the warrant *after* meeting with Christian and viewing the video, so they hastily obtained an unlawful general warrant just in the nick of time and without being fully transparent with or returning to the magistrate.

But like so much of this case, it gets worse for law enforcement. The Detectives sought and obtained a second search warrant, this time for the entirety of Christian's Google drive even though they were looking for a single file that they already saw and that Christian volunteered to produce. *Id*. at ¶¶ 37–38, 46. Did they mention the exculpatory video in the second affidavit?

> 9. On 11/02/23, Detectives interviewed Christian Ziegler with his attorney present. Christian advised he had consensual sex with the victim, and that he took a video of the encounter on 10/02/23 of the victim. Christian said he initially deleted the video, but since the allegation he uploaded the video to his Google Drive. Which [sic] we have not been able to locate upon a digital extraction.

D.E. 35-2, p. 8, ¶ 9. The only reasonable inference one could draw from paragraph 9 of the affidavit is that the detectives were told about but had not seen the video. The

[3] In *Maryland v. Garrison*, 480 U.S. 79, 86 (1987), the Court reinstated a conviction where officers executing a search warrant discontinued a search when they realized they were mistakenly but reasonably in the wrong apartment. In *Garrison*, the search warrant authorized a search of the third floor of an apartment building with a single apartment; when officers executing the warrant realized there were actually two apartments on the third floor, they properly limited their search in real time to the apartment occupied by the person named in the warrant and they stopped searching the previously unknown second apartment. The conviction was upheld because the officers acted reasonably as they executed the warrant. Officers "must reasonably limit their search accordingly" when they "discover the factual mistake" as they execute. *Id.* at 89 n.14. Consistent with *Garrison*, it was patently unreasonable for the Detectives to execute the warrant after learning new material facts.

Detectives lied and misled the magistrate. Perhaps they could not "locate [it] upon a digital extraction" but they saw it and concluded it was exculpatory on November 2, 2023, well before seeking the second warrant. *Id.* at ¶¶ 37–38. And when Christian offered to provide the exculpatory video to SPD, *i.e.*, to avoid SPD's need to execute the first search warrant, these Detectives declined. *Id.* at ¶ 38.

Based on political animus, the Detectives engaged in basic but profound constitutional misconduct by lying to and otherwise misleading the magistrate. They now look to the same magistrate to provide cover for their misconduct. This fails.

B. Both Detectives Cox and Llovio are Personally Liable

Both Detectives oddly but erroneously claim they cannot be liable for violating Christian's Fourth Amendment rights. For a government official to be personally liable under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). One must plead "a causal connection between [the defendant] and the alleged constitutional deprivation." *Young v. Fleming*, 146 F. App'x 393, 395 (11th Cir. 2005).

Detective Cox drafted both illegal warrants, Am. Compl. at ¶¶ 29, 45, and submitted false affidavits which omitted any reference to the exculpatory video. *Id.* at ¶¶ 32, 48. The failure to disclose the exculpatory video was material because they would not have obtained the warrants had they disclosed it. *Id.* ¶ 127. Detective Cox's misconduct directly caused the Fourth Amendment violation. Putting aside the exculpatory video and its implications, Detective Cox sought and obtained an

unconstitutional general warrant with no limitations or particulars whatsoever. *Id.* at ¶¶ 31, 33, 45, 48. Because Detective Cox drafted the overly broad search warrants and misled the magistrate, she caused the Fourth Amendment violation.

Detective Llovio: (1) played a role in drafting both of the illegal search warrants and the false affidavits which supported them, (2) notarized both of the illegal warrants despite knowing they were false and misleading, and (3) was aware of the contents of the illegal warrants and false affidavits when they were submitted to Judge Krug. Am. Compl. at ¶¶ 31, 33, 45, 48.[4] Because Detective Llovio assisted in drafting both illegal search warrants, she is also directly responsible for the ensuing Fourth Amendment violation.

C. Omitting Material Information Violates the Fourth Amendment

A bedrock principle "of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Of course, a search warrant must be supported by a sworn affidavit from the applying law enforcement officer establishing the existence of probable cause before the neutral magistrate signs the warrant. *Id.*; U.S. CONST. amend. IV. The information presented in a search warrant affidavit must be truthful,

[4] Both Detectives argue that dismissal is required because the Amended Complaint does not identify the specific portions of the affidavits Detectives Cox and Llovio drafted, but that is irrelevant. A complaint does not need to be exact and include every minute detail, it just needs to present a claim that is facially plausible. *See Iqbal*, 556 U.S. at 678. At the pleading stage, it is impossible to know which of the two lead detectives drafted or edited any portion of the documents.

meaning "the information put forth is believed to or appropriately accepted by the affiant as true[,]" *id.* at 165, and contain all information that is material to a finding of probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997). Thus, "[i]ntentional or reckless misstatements or omissions in a warrant affidavit could violate the Fourth Amendment." *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019). With regard to omissions, the failure to include material information rises to the level of a Fourth Amendment violation when the omission is "made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale*, 117 F.3d at 1327. Direct evidence of recklessness is not necessary, as it may be inferred when "when the facts omitted from the affidavit are clearly critical to a finding of probable cause[.]" *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

This Circuit applies a two-part test to determine if a misstatement or omission rises to the level of a Fourth Amendment violation. *Paez*, 915 F.3d at 1287. First, the district court must determine "whether there was an intentional or reckless misstatement or omission." *Id.* Then, the district court "examine[s] the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Id.*

i. <u>The Cell Phone Warrant</u>

The Detectives applied for and obtained an overly broad search warrant for Christian's cell phone. Am. Compl. at ¶¶ 29–35. It was supported by an affidavit drafted by both Detectives. *Id.* at ¶ 31. Notably absent is a reference to the exculpatory video that the Detectives planned on viewing hours later. [D.E. 35-1].

The Detectives' failure to mention the exculpatory video rises to the level of a Fourth Amendment violation. First, the failure to mention the existence of an exculpatory video was intentional or, at the very least, done with a reckless disregard for accuracy of the affidavit. Prior to the drafting of the Cell Phone Search Warrant, Sergeant Riffe informed Detectives Cox and Llovio of the exculpatory video and the officers' plan to view the video the next day. Am. Compl. at ¶¶ 28–29. Despite being fully aware of the fact that Mr. Ziegler possessed an exculpatory video, the Detectives still proceeded to draft a search warrant for Mr. Ziegler's cell phone. At the time of drafting, both Detectives Cox and Llovio knew the exculpatory video existed, but they failed to mention it at all in the supporting affidavit. [D.E. 35-1]. The video undermined any finding of probable cause.

But the Detectives went even further. They obtained the warrant after learning of the video, but they executed the warrant after watching the video and concluding it was exculpatory. Executing a general search warrant after having actual knowledge of fully exculpatory evidence is unconstitutional and inexcusable.

ii. <u>The Google Warrant</u>

Despite searching and seizing the entire contents of Christian's phone, they were unable to locate the exculpatory video. Am. Compl. at ¶ 45. The Detectives then drafted and executed a general warrant for Christian's Google drive but by this point they knew his innocence. *Id.* at ¶¶ 46, 47. The Detectives lied in the supporting affidavit by omitting their review and knowledge of the exculpatory video. *Id.* at 46–48. Even

worse, they omitted the fact that Christian offered to provide SPD with the exculpatory video. *Id.*

The Detectives' failure to include this material information in the affidavit was intentional or, at the very least, done with a reckless disregard for the truth. They viewed the video themselves and spoke with Mr. Ziegler about the video during their meeting with Attorney Byrd, *see* Am. Compl. at ¶¶ 37–38, but still failed to disclose it. [D.E. 35-2]. The exculpatory video was material because it completely undermined probable cause, *i.e.*, Judge Krug never signs the second warrant. Lying to a magistrate to obtain a general search warrant is peak Fourth Amendment violation.

D. <u>The General Warrants Violated Christian's Fourth Amendment Rights.</u>

The Fourth Amendment's particularity requirement "is intended to preclude 'general warrants' by 'requiring a particular description of the things to be seized.'" *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "No Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." U.S. CONST. amend. IV (emphasis added). The purpose of the particularity requirement is to prevent "general, exploratory rummaging in a person's belongings[,]" *Coolidge*, 403 U.S. at 467, and assure "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh*, 540 U.S. at 561. It is axiomatic that "a search conducted pursuant to a warrant that fails to conform to the particularity of the Fourth Amendment is unconstitutional."

*Groh v. Ramirez*, 540 U.S. 551, 564 (2004); *see also United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000) ("A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad."). "It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). "Put another way, a search warrant will survive a particularity challenge under governing Eleventh Circuit precedent if it sufficiently connects the items to be searched and seized to the crime(s) under investigation." *United States v. Williamson*, Case No. 8:21-cr-355-WFJ-CPT, 2023 WL 6210841, at *5 (M.D. Fla. July 6, 2023).

i. The Cell Phone Warrant

The Cell Phone Warrant violates the Fourth Amendment's particularity requirement because it permitted the search and the seizure of Mr. Ziegler's entire phone. The supporting affidavit avers that the Detectives were investigating Mr. Ziegler for an alleged sexual assault in violation of section 794.011(4)(b), Florida Statutes. [D.E. 35-1 at p. 4]. The affidavit then provides a brief summary of the evidence gathered to that point, including an interview with Ms. Doe, descriptions of text messages between Mr. Ziegler and Ms. Doe from the night the alleged assault occurred, and descriptions of controlled text messages and phone calls between Mr. Ziegler and Ms. Doe. *Id.* at 5–7. The affidavit then contains boilerplate language about

how common it is for criminals to communicate about their criminal activities through cell phones, how cell phones store cell site and geolocation data, and other general statements about the role cell phones play in criminal activity. *Id.* at 7–12. Importantly, there are no specific facts or allegations that directly connects the cell phone to the alleged sexual assault, except perhaps reference to text messages.

Even though the Detectives had no basis for searching and seizing Mr. Ziegler's cell phone, the Detectives obtained a warrant for *literally all data on the phone* without any limitation whatsoever. [D.E. 35-1]. Without a temporal limitation, SPD gained access to private information years before the alleged incident occurred in October 2023. SPD ultimately obtained Christian's "entire search history, 30,417 videos, 473,199 photos, and roughly 1,200 text messages," almost all off which were irrelevant to the investigation. Am. Compl. at ¶ 42. The cell phone warrant completely failed to satisfy the Fourth Amendment's particularity requirement and amounted to an impermissible general warrant. *See United States v. Vernelus*, Case No. 1:23-cr-20033-GAYLES, 2024 WL 4973326, at *9 (S.D. Fla. Mar. 4, 2024), *report and recommendation adopted in part, United States v. Vernelus*, Case No. 23-20033-CR-GAYLES/LOUIS, 2024 WL 4688857, at *3 (S.D. Fla. Nov. 6, 2024) (search warrant which "authorized a search of [an] entire phone" for the sole purpose of authenticating a video was "overbroad in violation of the Fourth Amendment"); *Robinson v. Ash*, 374 F. Supp. 3d 1171, 1185 n.5 (M.D. Ala. 2019) (search warrant for "any and all communications, emails, pictures, phone directory lists, and call logs" and led to law enforcement downloading of "16.2 gigabytes of data from the phone" was overbroad).

The Detectives could have used a search protocol to limit the data they ultimately seized, but they chose not to and frankly SPD has a policy of only searching and seizing entire phones. *See, e.g.*, *Blake v. United States*, 868 F.3d at 967, 975 (11th Cir. 2017) (warrant limited to data that 'constitute[d] fruits, evidence and instrumentalities of a specified crime" not overly broad); *see also Vernelus*, 2024 WL 973326, at *9.

The Cell Phone Warrant was "so facially deficient[,]i.e., in failing to particularize the place to be searched or things to be seized[,]" that Detectives Cox and Llovio could not reasonably presumed it was valid. *United States v. Leon*, 486 U.S. 897, 923 (1984) (Powell, J., concurring in part). Accordingly, both Detectives Cox and Llovio violated Mr. Ziegler's Fourth Amendment rights by obtaining and executing the facially overbroad Cell Phone Warrant.

ii. <u>The Google Drive Warrant</u>

The Google Drive Warrant drafted by Detectives Cox and Llovio also failed to comply with the Fourth Amendment's particularity requirement. The Eleventh Circuit has addressed proper search procedures for digital accounts:

> that 'there are generally two types of limitations that can particularize [ ] a warrant' authorizing a search of someone's digital account." The first type of limitation that can satisfy the particularity requirement is 'narrowing the search based on the subject matter of the data. For example, a warrant may limit investigators' search of communications data to only communications with known or suspected co-conspirators.' The second and 'preferred method of limiting the scope of a search warrant for a cloud account' is a 'temporal limitation.' As we explained in *McCall*: 'By narrowing a search to the data created or uploaded during a relevant time connected to the crime being investigated, officers can particularize their searches to avoid general rummaging. Could or data-

> based warrants with a sufficiently tailored time-based limitation can undermine any claim that they are the internet-era version of a general warrant.'

*United States v. Gyetvay*, 149 F.4th 1213, 1233 (11th Cir. 2025) (internal citations omitted).

Here, the Google warrant fails to contain either required limitation. Detectives Cox and Llovio sought the Google warrant for the sole purpose of locating the exculpatory video after they were unable to find it on Mr. Ziegler's cell phone. Am. Compl. at ¶ 45. Despite only needing to find a *single* video on the drive, the Detectives drafted a search warrant which sought, "stored electronic communications," "records concerning the identity of [Christian Ziegler]," "stored web bookmarks, web history, and autofill data," "Google Hangouts conversations," "any location history including global positioning coordinates," and other categories of data irrelevant to the Detectives' investigation, *i.e.*, the entire Google drive, without exception. *Id.* at ¶ 46. Even worse, the Google Warrant failed to limit include any temporal limitation, *i.e.*, the "preferred method" of particularization. *McCall*, 84 F.4th at 1328. The failure to include a temporal limitation granted Detectives Cox and Llovio access to years' worth of Mr. Ziegler's personal data, an overwhelming amount of which predated the alleged criminal activity. Am. Compl. at ¶ 46. Without exaggeration, Detectives Cox and Llovio drafted and obtained a warrant which required Google to disclose all data on the drive despite looking for a single video on a specific date known to everyone.

Nor can the Detectives assert a good faith defense. The Google warrant is broader and more egregious than other digital account search warrants which have

been upheld by courts in this Circuit. *See, e.g.*, *Blake*, 868 F.3d at 973–75 (upholding a digital account search warrant because "it sought only discrete categories of emails that were connected to the alleged crimes"); *McCall*, 84 F.4th at 1328 (search warrant for entire iCloud account not overbroad because it only stored two-and-a-half-months of data); *Gyetvay*, 149 F.4th at 1234 (warrant for digital information not overbroad because it identified categories of emails to be searched and limited the search to "the time period being investigated by the government"); *United States v. Liburdi*, Case No. 8:24-cr-564-KKM-TGW, 2026 WL 369393, at *9 (M.D. Fla. Feb. 10, 2026) (search warrant allowing full access to Skype account not overbroad because the account only predated the illegal activity by eleven months); *United States v. Velez*, Case No. 8:24-cr-456-WFJ-AAS, 2025 WL 1898677, at *4–*5 (M.D. Fla. July 9, 2025) (search warrant for Google drive not over broad because it was limited to the time period where defendant was in possession of contraband).

No reasonable officer could think a search warrant – executed for the sole purpose of obtaining a date stamp on a single video, but granted law enforcement access to years' worth of data – complied with the Fourth Amendment's particularity requirement. *See United States v. Mercery*, 591 F. Supp. 3d 1369, 1383 (M.D. Ga. 2022); *Vernelus*, 2024 WL 4973326, at *9 (search warrant which "authorized a search of [an] entire phone" for the sole purpose of authenticating a video was "overbroad in violation of the Fourth Amendment"); *Robinson*, 374 F. Supp. 3d at 1185 n.5 (search warrant for "any and all communications, emails, pictures, phone directory lists, and call logs" and led to law enforcement downloading of "16.2 gigabytes of data from the

phone" was overbroad). They could have obtained a warrant to search and seize the video at issue, *see Blake*, 868 F.3d at 974 ("[T]he government need only send a request with the specific data sought and Facebook will respond with precisely that data"), but the Detectives wanted it all.

Like the Cell Phone Warrant, the Google Warrant was "so facially deficient[,] i.e., in failing to particularize the place to be searched or things to be seized[,]" that Detectives Cox and Llovio could not reasonably presumed it was valid. *Leon*, 486 U.S. at 923 (Powell, J., concurring in part). Accordingly, both Detectives violated Christian's Fourth Amendment rights with the Google Warrant.[5]

## II. Plaintiff's Fourth Amendment Rights Were Clearly Established

"For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 548 U.S. 100, 104 (2018). A defendant "violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotations omitted). But "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). To

[5] Defendant Llovio also addresses SPD's failure to use a taint/filter team. However, SPD's failure to use a taint/filter team is limited to Count I against the City. Am. Compl. at ¶¶ 71–89.

overcome qualified immunity, a plaintiff is not required to present cases that are directly on point, as state "officials can still be on notice that their conduct violates established law even in novel factual circumstances[.]" *Id.* "Thus, in order for a plaintiff to show that a constitutional violation was clearly established, she must show (1) 'that a materially similar case has already been decided, giving notice to the police'; (2) 'that a broader, clearly established principle should control the novel facts in this situation'; or (3) 'this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary.'" *Maughon*, 505 Fed. App'x at 821 (quoting *Keating*, 598 F.3d at 766).

Both Detectives conclusively argue that the alleged violations were not clearly established because it "depends on extending broad Fourth Amendment principles to novel and fact-specific circumstances involving digital-search warrants, prosecutor review, judicial approval, and alleged privilege communications[.]" [D.E. 41 at p. 14]; [D.E. 43 at p. 8]. Nonsense. The Fourth Amendment law at issue has been clearly established *for decades or centuries*.

A. <u>You Cannot Lie in a Search Warrant Affidavit</u>

Mr. Ziegler's Fourth Amendment right to be free from searches not supported by probable cause has existed since the passage of the Bill of Rights. U.S. CONST. amend. IV. In 1978, the Supreme Court first held that search warrant affidavits which "contain a deliberately false or reckless false statement" violate the Fourth Amendment. *Franks*, 438 U.S. at 165. In 1997, the Eleventh Circuit extended *Franks* to include not only explicitly false statements, but also lies by omission. *See Madiwale*,

117 F.3d at 1327. The Eleventh Circuit has repeatedly held that "intentionally or recklessly omitting material information from a warrant affidavit violates the Fourth Amendment." *Butler v. Smith*, 85 F.4th 1102, 1112 (11th Cir. 2023) (citing *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019)); *see also Madiwale*, 117 F.3d at 1327 (explaining the Eleventh Circuit has already held that an officer is not entitled to qualified immunity when she omits facts from a search warrant affidavit that "were so clearly material that every reasonable law officer would have known that their omission would lead to a search in violation of federal law"). Both Detectives intentionally, or at the very least, recklessly omitted material information from both warrants. Neither warrant is signed if the magistrate knew about the video. Nor did the Detectives return to the magistrate when they acknowledged entirely exculpatory evidence prior to execution. It has been clearly established for decades that law enforcement cannot lie or mislead a magistrate to obtain a search warrant and for these Detectives to suggest otherwise is frivolous.

B. <u>General Warrants Have Been Unconstitutional Since 1791</u>

The particularity requirement is contained in the text of the Fourth Amendment, ratified in 1791. "A search conducted pursuant to a warrant that fails to conform to the particularity of the Fourth Amendment is unconstitutional." *Groh*, 540 U.S. at 564. It does not matter if law enforcement wants to search a home, a car, a phone, or an Instagram account, the Fourth Amendment requires the warrant authorizing that search to "sufficiently connect[] the items to be searched and seized to the crime(s) under investigation." *Williamson*, 2023 WL 6210841, at *5. By failing

to include any particularity requirement, the Detectives violated Christian's clearly established right to be free from general search warrants.

The Eleventh Circuit has directly addressed warrants for digital data and put law enforcement on notice by 2017 at the latest that search warrants which broadly seek access to the entirety of a cell phone or digital account violate the Fourth Amendment. *Blake*, 868 F.3d at 974 (holding that a search warrant that "required disclosure to the government of virtually every kind of data that could be found in a social media account" was overbroad); *see also Mercery*, 591 F. Supp. 3d at 1383 (explaining "the Eleventh Circuit in *Blake* put law enforcement on notice that warrants authorizing the type of broad search of social media accounts like the one in this case are overbroad"). In October 2023, prior to both warrants, the Eleventh Circuit reminded law enforcement that search warrants for digital accounts, like iCloud accounts, must contain a temporal limitation "to avoid general rummaging." *McCall*, 84 F.4th at 1328 (accepting government's concession that a search warrant "fell short of the particularity requirement because it allowed a search of all the conceivable data on the account without any meaningful limitation").

Both Detectives sought and obtained general search warrants that contained no limitations whatsoever on what was to be searched or seized.[6] They quite literally

[6] Footnote 2 of the Cell Phone Warrant acknowledges the lack of a temporal limitation but claims "it does contain a subject-matter limitation, which also satisfies the 4th Amendment particularity requirement." D.E. 35, ¶ 31; D.E. 35-1. But there is no subject-matter limitation to the warrant. None. None at all.

The Google Warrant contained no such footnote and also had no limitation.

rummaged through Christian's entire phone and entire Google drive, which is precisely what *McCall* confirmed is prohibited. General warrants like these have been prohibited since the founding of the Republic and these officers knew better.

***Conclusion***

For the above reasons, Plaintiff Christian Ziegler respectfully requests this Court deny Defendant Cox and Llovio's respective motions to dismiss.

Respectfully submitted,

Matthew Sarelson
Florida Bar 888281
Zachary Stoner, Esq.
Florida Bar 1032816
**DHILLON LAW GROUP INC.**
Attorneys for Plaintiffs
1601 Forum Place, Suite 202
West Palm Beach, Florida 33401
305.773.1952
msarelson@dhillonlaw.com
zstoner@dhillonlaw.com