**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO. 8:25-cv-02992-CEH-AAS**
**HONORABLE CHARLENE HONEYWELL**

CHRISTIAN ZIEGLER &
BRIDGET ZIEGLER,

Plaintiffs,

v.

CITY OF SARASOTA,
ANGELA COX, MARIA LLOVIO,
& ED BRODSKY, in his official capacity
as State Attorney for Florida's Twelfth
Judicial Circuit,

Defendants.
_______________________________________/

**DEFENDANT, CITY OF SARASOTA'S MOTION TO DISMISS COUNTS III AND VII OF PLAINTIFFS' SECOND AMENDED COMPLAINT**[1]

COMES NOW, the Defendant, CITY OF SARASOTA (hereinafter, the "City"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) and M.D. Fla. Local Rule 3.01, and hereby files this Motion to Dismiss Counts III and VII of Plaintiff's Second Amended Complaint [Doc. 102], and in support states:

---

[1] This Court previously dismissed Counts III and VII with leave to amend [Doc. 96]. In the Second Amended Complaint, Plaintiffs purport to supply allegations that will revive these same claims.

## INTRODUCTION

1. Plaintiffs, Christian Ziegler and Bridget Ziegler, bring this action under 42 U.S.C. § 1983, asserting violations of the Fourth, Fifth, and Fourteenth Amendments arising out of the City of Sarasota Police Department's ("SPD") criminal investigation of Mr. Ziegler for sexual battery and video voyeurism. [*See generally* Doc. 102].

2. Plaintiffs allege that during the investigation, City police officers obtained and executed three (3) search warrants directed to Mr. Ziegler's cell phone, Google Drive account, and Instagram/Meta account. [Doc. 102, at ¶¶ 29, 50-51, 61]. Plaintiffs contend that the warrants were overly broad and lacked sufficient temporal or subject-matter limitations [*id.* at ¶¶ 11, 29, 51, 61], that officers reviewed large volumes of digital data beyond what was necessary to the investigation [*id.* at ¶¶ 45-46], and that personal and marital communications were accessed and later included in police reports [*id.* at ¶¶ 44, 71].

3. Plaintiffs further allege that the investigation ultimately concluded without criminal charges being filed against Mr. Ziegler, but that the scope of the digital searches and the handling of the extracted data by SPD caused Plaintiffs reputational, emotional, and economic harm. [*Id.* at ¶¶ 66, 70-74].

4. Plaintiff, Christian Ziegler, brings three (3) counts against the City, alleging municipal liability under § 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights. In Count I, Mr. Ziegler challenges the three aforementioned search warrants as unconstitutional under the Fourth Amendment. In

Count II, he brings a claim for wrongful retention of the material SPD seized pursuant to the search warrants. In Count III, Plaintiff asserts a Fifth Amendment takings claim based on the City's continued retention and alleged public dissemination of his electronic data after the criminal investigation ended. [*Id.* at ¶¶ 110-111].

5. Plaintiff, Bridget Ziegler, brings a single count against the City (Count VII), alleging municipal liability under § 1983 based on SPD's search and seizure of her husband's electronic data. Specifically, she contends that the "City's post-seizure conduct, including the review, retention, use, and dissemination of her deeply private personal information," violated her Fourteenth Amendment privacy rights. [*Id.* at ¶ 189].

6. In Counts IV and V, Mr. Ziegler brings § 1983 claims against SPD Detective Angela Cox and Detective Maria Llovio, respectively, for violations of his Fourth Amendment rights.

7. In Count VI, Mr. Ziegler brings a claim against Ed Brodsky, in his official capacity as State Attorney for Florida's Twelfth Judicial Circuit, alleging that the State Attorney's continued possession of a subset of the seized materials and potential compliance with public records requests violates his constitutional rights, and seeking injunctive relief pursuant to *Ex Parte Young*.

8. Counts III and VII fail as a matter of law and should be dismissed with prejudice. Count III attempts to transform the continued retention and alleged dissemination of data seized during a criminal investigation into a Fifth Amendment takings claim. The seizure and retention of property as evidence pursuant to the

government's police power in the course of enforcing criminal law does not constitute a compensable taking for public use within the meaning of the Fifth Amendment. The amended allegations still fail to establish that the City appropriated a protected property interest for public use.

9. Count VII fails insofar as Mrs. Ziegler seeks to assert a Fourteenth Amendment privacy claim arising from the search and seizure of Mr. Ziegler's electronic devices and accounts. Where an alleged injury stems from an allegedly unlawful search or seizure, the Fourth Amendment provides the exclusive constitutional framework. The Fourteenth Amendment cannot be invoked as a substitute or fallback theory to avoid the personal standing limitations in Fourth Amendment jurisprudence. Moreover, Mrs. Ziegler does not allege that her own property was searched or seized, nor does she adequately allege an invasion of a constitutionally protected privacy interest distinct from the review of seized information and its inclusion in police reports during a criminal investigation. Plaintiff's added assertions of disclosure to Michael Barfield, Peter Schorsch, and unidentified "members of the public" remain conclusory [*see* Doc. 102 at ¶ 203].

10. This Court previously dismissed Counts III and VII with leave to amend. The Court held that Count III lacked facts showing that the City converted Mr. Ziegler's property to public use, and that Count VII lacked sufficient facts showing that the City improperly disclosed Mrs. Ziegler's intimate information. [Doc. 96, at pp. 7-16]. Despite the guidance from the Court's dismissal order, the Second Amended

Complaint does not cure these deficiencies. The claims should now be dismissed with prejudice.

## MEMORANDUM OF LAW

### I. Legal Standard

"The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2) which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Coffie v. Fla. Crystals Corp.*, 460 F.Supp.3d 1297, 1303 (S.D. Fla. 2020).

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Legal conclusions may not be provided in the complaint unless they are supported by factual allegations. *Iqbal*, 556 U.S. at 678. While the court accepts well-pleaded facts as true, it is not required to accept mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" as true. *Twombly*, 550 U.S. at 555. The Court's inquiry at this stage is to determine whether the pleadings give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

## II. Count III fails as a matter of law because retention of investigative evidence does not establish a compensable taking for public use under the Fifth Amendment.

The Fifth Amendment prohibits the taking of private property for public use without just compensation. U.S. CONST. amend. V. However, the Takings Clause applies to the government's exercise of eminent domain, not to the lawful seizure of property pursuant to its police powers. The Supreme Court has distinguished between takings for public use and property seizures pursuant to police power. For example, in *Bennis v. Michigan*, the Court rejected a takings claim following a forfeiture, distinguishing property seized pursuant to some state police power other than eminent domain. 516 U.S. 442, 452–53 (1996). Importantly, the innocence of the property holder does not transform a seizure into a taking under the Fifth Amendment. *Id.* at 453. *See AmeriSource Corp. v. U.S.*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) ("The innocence of the property owner does not factor into the determination… *United States v. One 1979 Cadillac Coupe De Ville*, 833 F.2d 994, 1000 (Fed. Cir. 1987) (noting that an acquittal 'did not make the government seizure and possession [of property related to the crime with which the defendant was charged but ultimately acquitted] any less proper, or convert that seizure into a taking')").

In *AmeriSource*, federal agents seized large quantities of pharmaceutical drugs during a criminal investigation into illegal drug distribution. 525 F.3d at 1150. Although the drugs were never introduced as evidence at trial and ultimately expired while in government custody, the court held that the government's retention of the property as potential evidence was an exercise of its police power, not eminent domain. *Id.* at 1151, 1153–54. The court reasoned that property seized and held pursuant to criminal process, even if later destroyed or rendered unusable, did not give rise to a Takings Clause claim because the government was acting in its sovereign capacity to enforce criminal law, not to appropriate property for public use. *Id.* at 1154.

Similarly, in *Daker v. Reynolds*, a prisoner filed a § 1983 action against several county employees in regard to his criminal trial and resulting convictions. No. 21-10614, 2023 WL 1872726, at *1 (11th Cir. Feb. 10, 2023). The plaintiff alleged that the police executed several search warrants on his home in connection with his criminal case and seized numerous items, including his personal computer. *Id.* at *2. The plaintiff requested the return of all property seized from him during his criminal case, which the police refused, and the plaintiff claimed that this violated the Fifth Amendment Takings Clause. *Id.* The Eleventh Circuit noted uncertainty about the Takings Clause's application to seizures of property pursuant to lawful criminal search warrants, but held that the sparse allegations failed to state a claim. *Id.* at *6 n.10. *See also AmeriSource*, 525 F.3d at 1153 ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause.").

In this case, the Second Amended Complaint alleges that SPD obtained judicially authorized warrants and seized electronic data during an investigation into alleged criminal conduct. Such conduct is paradigmatic of the government's exercise of its police powers. Plaintiff now disclaims his initial takings theory based on the original seizure and instead relies on the City's continued retention and dissemination of data after the investigation ended. [Doc. 102, at ¶¶ 110-111].

Plaintiff nonetheless fails to adequately allege a public use of the seized property. A takings claim requires governmental appropriation of private property for public use. The Second Amended Complaint alleges that the City retained the data exclusively for public dissemination and produced data after the investigation closed. [Doc. 102, at ¶¶ 125-129]. Unlike the prior pleading, these allegations assert actual public production, but they do not describe what underlying files were produced or how the production appropriated a protected property interest. The factual allegations describe personal information included in police reports and the release of those reports. [*Id.* at ¶ 71]. Calling that process a conversion to public property does not supply the missing facts needed to establish a compensable appropriation.

Nor does Plaintiff identify the particular property entitlement allegedly taken. Property rights are informed by state law, traditional property principles, historical practice, and precedent. *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023). An expectation of privacy in communications or information held by a third-party platform does not, by itself, establish a property interest in all of that data. Privacy and property are distinct interests. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 64 (1992); *Chatrie*

*v. U.S.*, 609 U.S. 605, 620 (2026). Indeed, recent Supreme Court opinions reflect disagreement over whether particular data stored on a third-party platform constitutes the user's property. *Compare Chatrie*, 609 U.S. at 647 (Gorsuch, J., concurring in the judgment) (concluding that the user's contractual rights to control Google Location History data supported a property interest), with *id.* at 658–62 (Alito, J., dissenting) (rejecting a property interest in the information Google conveyed to police). Although information can qualify as property (for example, data protected as trade secrets under state law), the asserted property right must have a legal basis beyond the owner's desire for confidentiality. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001–04 (1984). Paragraphs 112-113 of the Second Amended Complaint assert ownership and a right to exclude others from access, but do not identify the source or scope of the property right the City allegedly appropriated without just compensation.

The claim that the City's retention of Plaintiff's digital data deprives Plaintiff of "all beneficial use and possession" is likewise unsupported by the alleged facts. [Doc. 102, at ¶ 123]. Retaining a digital copy does not physically dispossess Plaintiff of his original files or accounts. The complaint does not allege that the City deleted his original data, denied him access to his online or cloud-based accounts, or prevented his continued use of the data. Nor does it identify a proprietary value in the information that the City appropriated or destroyed through the alleged production. The pleaded injuries concern embarrassment, reputation, and lost business arising from the investigation and disclosure. [*Id.* at ¶¶ 70-74]. Those injuries do not themselves establish the loss of a property interest for which the City owes its value as

just compensation. Plaintiff must allege a taking of a legally protected property right, not simply an unwanted disclosure of private information.

Furthermore, the assertion that the City's retention of Mr. Ziegler's data serves exclusively to facilitate public dissemination and is not done pursuant to legal authority is not a well pled allegation. This Court ordered preservation of the data because Plaintiffs placed its contents at issue and destruction would impair the City's defense. [Doc. 33, at pp. 6-7]. The Florida Second District Court of Appeal also held that the data SPD copied, flagged as relevant, and reviewed in the investigation are public records, subject to applicable exemptions, and rejected Plaintiffs' asserted Fourth Amendment and marital privilege grounds for withholding those records. *See Fla. Ctr. for Gov't Accountability, Inc. v. Ziegler*, No. 2D2024-1806, 2026 WL 2588976, at *6–8, 12–13 (Fla. 2d DCA Sept. 2, 2026).[2] At least for retention governed by those lawful Court orders, the City has a recognized lawful governmental purpose for retaining the seized data independent of public disclosure. A legitimate governmental purpose for preserving or producing records is not itself a conversion to public use required by Plaintiff's taking theory.

The non-binding authorities cited by Plaintiff regarding return of records do not fill that gap. *Sovereign News Co. v. United States*, 690 F.2d 569, 577–78 (6th Cir. 1982), cited in paragraph 119 of the Second Amended Complaint, addressed return of records

[2] The Court may consider these orders at the pleading stage and take judicial notice of their existence and legal effect. Fed. R. Evid. 201(b); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

under former Criminal Rule 41(e), not whether wrongful retention is a compensable taking. Nor does the *Fulton* panel opinion invoked in Plaintiffs' prior response supply a binding rule that post-investigation retention is a taking, as that opinion was vacated for en banc rehearing. *See generally Fulton v. Fulton Cnty. Bd. of Comm'rs*, 174 F.4th 1350 (11th Cir. 2026); [*see* Doc. 96, at pp. 8-9].

Accordingly, Count III still fails to plausibly allege appropriation of a protected property interest for public use and should be dismissed with prejudice.

## III. Mrs. Ziegler fails to state a Fourteenth Amendment right-to-privacy claim under 42 U.S.C. § 1983.

Count VII attempts to assert an independent Fourteenth Amendment claim on behalf of Mrs. Ziegler based on the search of Mr. Ziegler's devices and accounts and the subsequent handling of the recovered information. That claim fails for two reasons. First, Count VII impermissibly repackages a Fourth Amendment unlawful search claim as substantive due process; and second, Mrs. Ziegler alleges no facts establishing an unconstitutional disclosure of her own protected intimate information. To the extent she challenges the searches themselves, Mrs. Ziegler seeks to vindicate an alleged constitutional injury that belongs, if at all, to Mr. Ziegler.

### A. <u>The Fourteenth Amendment cannot be used to recast a Fourth Amendment unlawful search claim.</u>

The Supreme Court has held that where a particular constitutional amendment "provides an explicit textual source of constitutional protection" against a specific type of government conduct, courts must analyze the claim under that particular amendment rather than under the "more generalized notion of 'substantive due

process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (plurality opinion); *Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996) (holding that plaintiffs' Fourteenth Amendment substantive due process claim was foreclosed because the Fourth Amendment provided protection for their claim that law enforcement officers participated in an unlawful seizure of their mobile home).

The alleged injuries arising from the search and seizure of Mr. Ziegler's cell phone and online accounts and the subsequent review of that data are squarely governed by the Fourth Amendment. *See Heine v. Rice*, No. 8:00CV2297T24TBM, 2001 WL 1338780, at *3–4 (M.D. Fla. Apr. 9, 2001). In *Heine*, the plaintiff brought a § 1983 action against a county sheriff and sheriff's deputies, asserting claims for unreasonable search and seizure and for violation of substantive due process arising from a search of plaintiff's home. *See id.* at *1–2. Similar to the claims here, the plaintiff in *Heine* claimed that police violated his substantive due process rights under the Fourteenth Amendment by withholding exculpatory information from the affidavits for the search warrants. *Id.* at *1, 4.

This Court held that the plaintiff was not entitled to relief under the substantive due process clause of the Fourteenth Amendment because his claims arose from an alleged violation of the Fourth Amendment, and thus, the Fourth Amendment would govern. *Id.* at *4. The Court emphasized that substantive due process claims are very limited in nature and that "[i]nstead of relying on substantive due process to restrict the exercise of the government's arbitrary authority in particular situations, courts are

to look to the protections granted in the first Ten Amendments of the Constitution." *Id.* at *3 (citing *Albright*, 510 U.S. at 273).

In this case, Mrs. Ziegler invokes the Fourteenth Amendment to complain about privacy harms arising from the digital searches and seizures at issue. [Doc. 102, at ¶¶ 189, 194-198]. SPD's subsequent review of that data during the course of its investigation stems from the searches and seizures of the electronic data obtained therefrom. This Court already explained that the review and documentation of the seized information in police reports are aspects of an investigative search, rather than a distinct substantive due process violation. [Doc. 96, at pp. 11-12]. Mrs. Ziegler cannot transform a search and seizure claim into a substantive due process claim by simply relabeling the alleged consequences of the searches and seizures as privacy harms. *See Armstrong v. City of Boaz*, No. 4:16-CV-1065-VEH, 2017 WL 3129376, at *12 (N.D. Ala. July 24, 2017).

The Fourteenth Amendment does not provide a fallback constitutional theory whenever a plaintiff lacks standing to assert a Fourth Amendment claim. Fourth Amendment rights are personal and may not be vicariously asserted. *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Rakas v. Illinois*, 439 U.S. 128, 133–35 (1978). Here, the Second Amended Complaint does not allege that Mrs. Ziegler owned, possessed, or exercised control over Mr. Ziegler's cell phone or his Google or Instagram accounts. Paragraph 190 instead asserts an interest in communications stored on his devices and accounts. That assertion does not permit Mrs. Ziegler to challenge searches of her husband's devices under a different constitutional provision.

The added marital privilege allegations do not establish a constitutional obligation to exclude every spousal communication from investigative review. [*See* Doc. 102, at ¶¶ 190-197]. The spousal privilege is an evidentiary rule protecting confidential marital communications in legal proceedings. It does not impose a general prohibition on using information obtained during an investigation. *See* § 90.504, Fla. Stat. (2026); *State v. Grady*, 811 So.2d 829, 832 (Fla. 2d DCA 2002). Alleging that the seized material included marital communications therefore does not establish an independent Fourteenth Amendment privacy violation.

**B. Mrs. Ziegler fails to allege an invasion of her own constitutionally protected privacy interest.**

In order to establish standing, Plaintiff must show (1) an "'injury in fact'—an invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical,'" (2) a "'causal connection' between her injury and the challenged action of the defendant," and (3) redressability, meaning a favorable decision would eliminate the injury. *See Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). This Court's prior dismissal order found no sufficiently alleged invasion of Mrs. Ziegler's own protected privacy interest. [Doc. 96, at pp. 14-16]. The added allegations in the Second Amended Complaint still fail to plausibly establish that injury.

An independent informational-privacy claim requires facts supporting an improper disclosure of protected intimate information. *Fadjo v. Coon*, 633 F.2d 1172,

1175–76 (5th Cir. 1981)[3]; *James v. City of Douglas*, 941 F.2d 1539, 1543–44 (11th Cir. 1991). In *Fadjo*, an investigator compelled intimate testimony under assurances of confidentiality and then allegedly provided it to a private investigator who conveyed it to insurers. 633 F.2d at 1174–76. In *James*, officers allegedly allowed others to view a sexually explicit videotape for personal gratification, without a legitimate police purpose. 941 F.2d at 1540–41, 1544. Those cases identified the intimate material, its transmission to others, and circumstances supporting the improper nature of the disclosure.

Here, paragraph 199 repeats the allegation that inclusion of information in police reports "caused or permitted" disclosure to third parties, which this Court already found insufficient. [*See* Doc. 96, at pp. 12-14, 16]. Paragraphs 194 and 200-202 now assert intentional dissemination, unnecessary inclusion in reports to cause humiliation, and disclosure outside the investigation. But these labels do not supply facts identifying particular improper disclosures. Even allegations of intent remain subject to Rule 8's requirement of factual support. *Iqbal*, 556 U.S. at 686–87.

Paragraph 203 identifies "City communications about Mrs. Ziegler to Peter Schorsch" and "City communications about Mrs. Ziegler to Michael Barfield." Naming recipients does not explain what protected intimate information was disclosed, how it came from the seized materials, or circumstances separating the

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

communication from legitimate investigative reporting. Plaintiff need not plead evidence or every exact detail, but must provide factual context supporting an inference that an unconstitutional disclosure actually occurred. An unspecified communication "about" Mrs. Ziegler does not supply that context. Pleading on information and belief does not cure the omission. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining to accept allegations made "upon information and belief" where there were insufficient facts to make the allegations plausible).

Unlike *Fadjo* and *James*, the Second Amended Complaint leaves the subject matter and circumstances of those alleged communications unspecified. In *James*, the court relied on allegations that the officers allowed other individuals to view the sexually explicit tape without a legitimate police purpose. The court also expressly declined to decide whether the defendants' own viewing of the tape, standing alone, violated a clearly established constitutional right. 941 F.2d at 1544 n.9. Thus, the amended allegations of police review, cataloguing, and lack of a legitimate purpose therefore do not supply the missing facts showing an improper disclosure to others.

Paragraph 203 also identifies "police reports and other documents released" in response to public records requests. Florida law cannot override a federal constitutional right, but Plaintiff must still allege facts showing that the City disclosed protected intimate information under circumstances in which no sufficient governmental interest justified the disclosure. *See Fadjo*, 633 F.2d at 1175–76; *James*, 941 F.2d at 1543–44. The Second Amended Complaint's reference to responses to public records requests does not explain what protected information was disclosed or

why its disclosure went beyond legitimate investigative reporting or constituted production of non-exempt public records. Merely characterizing investigative reporting and records production as intentional, humiliating, or conscience-shocking does not supply those facts. Accordingly, Count VII still fails to allege the invasion of Mrs. Ziegler's own constitutionally protected privacy interest and should thus be dismissed.

### C. **The amended allegations in Count VII do not establish municipal liability.**

Municipal liability requires a policy or custom that caused the constitutional injury. Mere *respondeat superior* is insufficient. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). Plaintiff need not identify a final policymaker by name, but must plausibly allege a policy or practice causing the violation. *Hoefling v. City of Miami*, 811 F.3d 1271, 1280–81 (11th Cir. 2016). The policies alleged in paragraphs 47-49 and 195-196 of the Second Amended Complaint concern obtaining and reviewing electronic information, not gratuitous disclosure to third parties. Paragraph 205's general reference to the City's "customs, policies, and practices," and inadequate "safeguards" supplies no facts showing a practice of such disclosures or policymaker authorization or adoption of them. A failure-to-train theory also requires deliberate indifference, ordinarily supported by a pattern of similar violations. *See Connick v. Thompson*, 563 U.S. 51, 61–64 (2011); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328–30 (11th Cir. 2015). Paragraph 197 alleges foreseeability generally, without facts

showing the notice or patently obvious risk necessary to satisfy that standard. Accordingly, Count VII also fails to state a claim against the City under *Monell*.

## IV. Counts III and VII should be dismissed with prejudice.

Leave to amend need not be granted where a plaintiff repeatedly fails to cure deficiencies by amendments previously allowed or where further amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs have already amended twice. This Court expressly allowed the latest amendment because the prior amendment occurred without the benefit of a dismissal order. [Doc. 96, at pp. 9, 16]. Plaintiffs have now had the Court's specific guidance and an opportunity to cure. Nevertheless, Count III still fails to set forth sufficient facts alleging appropriation of digital data for public use without just compensation, and Count VII still lacks facts establishing an unconstitutional, improper disclosure and municipal responsibility for it. Plaintiffs' continued failure to cure the identified deficiencies warrants dismissal with prejudice rather than another opportunity to replead the same unsupported theories.

WHEREFORE, for the foregoing reasons, the Defendant, CITY OF SARASOTA, respectfully requests that the Court enter an Order granting this Motion to Dismiss, and dismissing Counts III and VII against the City with prejudice for failure to state a claim, and granting any further relief the Court deems appropriate.

**Dated: November 6, 2026**

Respectfully Submitted,

s/ James O. Williams, Jr., Esq.
James O. Williams, Jr., Esq.
Florida Bar No.: 614513

**LOCAL RULE 3.01(g) CERTIFICATE**

I HEREBY CERTIFY that undersigned counsel conferred with Plaintiffs' counsel by email correspondence on November 4, 2026, and opposing counsel disagreed on the resolution of this Motion.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the foregoing was filed through the CM/ECF filing system which will provide copies to all parties on November 6, 2026.

s/ James O. Williams, Jr., Esq.
James O. Williams, Jr., Esq.
Florida Bar No. 614513
Abigail Laflamme, Esq.
Florida Bar No. 1058075
Service to: eservice@wlclaw.com
Williams, Leininger & Cosby, P.A.
555 Heritage Drive, Suite 201
Jupiter, FL 33458-5290
Telephone: 561-615-5666
Facsimile: 561-615-9606
Attorneys for Defendant City of Sarasota