**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**Case No.: 8:25-cv-02992-CEH-AAS**

**CHRISTIAN ZIEGLER & BRIDGET ZIEGLER,**
Plaintiffs,
v.
**CITY OF SARASOTA, *et al.*,**
Defendants.
_______________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SARASOTA'S MOTION TO DISMISS COUNTS III & VII OF THE SECOND AMENDED COMPLAINT**

Plaintiffs Christian Ziegler and Bridget Ziegler oppose the City of Sarasota's Motion to Dismiss Counts III and VII of the Second Amended Complaint (Doc. 116).

## INTRODUCTION

This is the City's second motion to dismiss Counts III and VII, and it should be denied. The Court dismissed those counts without prejudice because Count III lacked facts showing that the City converted Mr. Ziegler's property to public use. Doc. 96 at 9. Count VII did not allege that the City actually disclosed Mrs. Ziegler's intimate information. Doc. 96 at 14, 16. The Second Amended Complaint cures both gaps. Count III now alleges that after the investigation closed, the City retained Mr. Ziegler's data to disseminate it and produced it to the public. Count VII now alleges that the City intentionally disclosed Mrs. Ziegler's intimate marital material, which it knew had no investigative value, to named recipients. Accepting those allegations as true, both counts state a claim.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests only the facial sufficiency of the complaint; the Court accepts the well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. There is no heightened pleading standard for claims under 42 U.S.C. § 1983; the Twombly-Iqbal plausibility standard "applies to all civil actions," and the Eleventh Circuit has "got[ten] rid of heightened pleading altogether in § 1983 cases." See Hoefling v. City of Miami, 811 F.3d 1271, 1275 (11th Cir. 2016).

## ARGUMENT

I. Count III states a Fifth Amendment takings claim because the City retained and produced Mr. Ziegler's private property to the public after its police power ended.

*A. The claim is the post-investigation retention and public production, not the seizure.*

The City opens with authority holding that property seized and held as evidence under the police power is not taken for public use, but those cases do not reach this claim. Mr. Ziegler "is not asserting that the underlying search and seizure constitutes a taking". Doc. 102 at ¶ 110. He asserts only that "the continued retention and public dissemination of his private property … after the criminal investigation ended constitutes a taking". Doc. 102 at ¶ 111. The police power that justified the initial seizure ended when the State Attorney declined to file charges and the investigation closed on March 6, 2024. No prosecution is pending or contemplated.

The persuasive authority confirms the limit the City ignores. In the analogous records context, the Sixth Circuit held that "when the government has no further legitimate use for the records, it ***must*** return the copies as well as the originals," and "may not keep the copies purely for the sake of keeping them or because it is 'hopeful'

they may be relevant to some future investigation." Sovereign News Co. v. United States, 690 F.2d 569, 577–578 (6th Cir. 1982) (emphasis added). That principle — that the government's authority to hold seized materials is tethered to a continuing legitimate use — bars the City's retention of copied digital data after its investigation closed. The only reason the City retained the documents after the investigation ended is Florida's Public Records Act. Florida's Public Records Act cannot impair Mr. Ziegler's federal constitutional rights.

*B. The Second Amended Complaint now pleads public use.*

The Court dismissed the prior count because the government's purpose controls the public-use inquiry and the pleading alleged only that the public "might" request records — not an actual transfer to public use. The Second Amended Complaint supplies the missing facts. It alleges the City retained the data "exclusively" to produce it to the public, actually produced data from the cell phone, Google Drive, and Meta accounts to the public after the investigation closed, and converted the property so that "[t]he public can now use" it. Doc. 102 at ¶¶ 125-128. Those allegations describe the government's purpose as public dissemination — not investigation — which is precisely what the public-use inquiry asks.

As the Second District itself noted, the Public Records Act does not merely require the production of public records, it requires the preservation of public records upon request. See Florida Center for Government Accountability, Inc. v. Ziegler, --- So.3d ---, 2026 WL 2588976, *10 (Fla. 2d DCA 2026) (applying Fla. Stat. § 119.07). Or put another way, under Florida law, it is a public records request itself that is the

trigger, not the dissemination to the public, because the preservation itself is a public use.[1] Mr. Ziegler's takings claim is not depending upon the seized material being disseminated to the public; it is triggered by the custodian preserving it for the public to access in response to a public records request.

The City faults the Second Amended Complaint for not identifying "what underlying files were produced." Motion to Dismiss at 8. Rule 8 does not demand that inventory. The plausibility standard "does not require 'detailed factual allegations,'" and a plaintiff must plead the who, what, when, where, and how of a claim only when Rule 9(b)'s heightened standard applies. Young v. Grand Canyon Univ., Inc., 57 F.4th 861, 872–873 (11th Cir. 2023). No such standard governs a takings claim. The Second Amended Complaint alleges who acted (the City), what it did (preserved for the public and produced to the public data from Mr. Ziegler's cell phone, Google Drive, and Meta account), when (after the investigation closed on March 6, 2024), and why (to disseminate the data to the general public rather than for any investigative purpose). Doc. 102 ¶¶ 125–126, 128. Those facts "raise a reasonable expectation that discovery will reveal evidence" of liability, which is all plausibility requires. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012). The City also needs no further notice. It knows what it produced, because the production records are its own. Describing

[1] If the City took private property for a public park, the taking would be triggered when it took the property for the purpose of turning it into a park. The takings claim is not dependent on a member of the public actually accessing the park. This is no different. The documents remain in the possession of the City solely because someone made a public records request and the request triggers the City's statutory obligation to preserve Mr. Ziegler's private data.

intimate files item by item in a public pleading would inflict the very injury this action seeks to remedy.

*C. Mr. Ziegler has a cognizable property interest in his data.*

The City argues that a mere expectation of privacy is not property. Mr. Ziegler does not rest on privacy in Count III. He alleges ownership of the data and information themselves — “not merely the devices” — and invokes the right to exclude, “a core element of private property.” Doc. 102 at ¶¶ 112–113; see Kaiser Aetna v. United States, 444 U.S. 164, 176 (1979); see also Cedar Point Nursery v. Hassid, 594 U.S. 139, 149-50 (2021). The right to exclude extends to personal property as fully as to real property: the Takings Clause “protects ‘private property’ without any distinction between different types,” and the Government has a “categorical duty to pay just compensation when it takes your car, just as when it takes your home.” Horne v. Dep't of Agric., 576 U.S. 351, 358–360 (2015).

That interest reaches digital data. The Supreme Court has recognized that intangible information can be Fifth Amendment “property,” holding that data cognizable as a property right “is protected by the Taking Clause” and defining property as “the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it.” Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003–1004 (1984). The defining incident of that interest in intangible data is precisely the right to control disclosure — the right to exclude. *Id.* at 1011; see also Carpenter v. United States, 484 U.S. 19, 25–27 (1987) (exclusivity is an important aspect of confidential business information and most private property); Coll. Sav. Bank

v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 672–673 (1999) (Applying a general property rule to intangible property, "[t]he hallmark of a protected property interest is the right to exclude others.").

The City's suggestion that Mr. Ziegler lost any property interest once his data was copied — because duplicates reside on his devices or with third-party platforms — misunderstands the interest. Courts confronting the retention of forensic images and copied account data have recognized that the owner retains a possessory and ownership interest in the copies themselves. In an instructive case, the government imaged a computer and copied cloud and email data under warrants, closed its investigation, and kept the copies. Richman v. United States, 350 F.R.D. 401, 416 (D.D.C. 2025); see also United States v. Hubbard, 650 F.2d 293, 302–03 (D.C. Cir. 1980) ("the party from whom materials are seized in the course of a criminal investigation retains a protectible property interest in the seized materials" and explaining that this interest is "cognate to and supportive of" constitutional rights). That interest survives even when the owner has the same data elsewhere, because "one inherent part of the right to possess is the 'right to exclude'": each copy law enforcement makes and keeps interferes with the owner's ability to "control who else could access" the information. Richman, 350 F.R.D. at 414–15. The Second Circuit, sitting *en banc*, likewise treated a retained forensic mirror as continuing to implicate the owner's interests — not the government's — recognizing that such a copy holds a vast trove of personal information about the person to whom the drive belongs. United

States v. Ganias, 824 F.3d 199, 218 (2d Cir. 2016); see id. at 205–206. Producing the data to the public extinguished that right to exclude, which cannot be restored.

The City contends that a property right "must have a legal basis beyond the owner's desire for confidentiality," that property rights are defined by state law and traditional principles, and that Doc. 102 at ¶¶ 112–113 does "not identify the source or scope of the property right." Motion to Dismiss at 9. The state trial court correctly adjudicated the question in favor of the Zieglers. Doc. 17-1. On appeal, the Second District reversed but expressly left the property question open. Fla. Ctr. for Gov't Accountability, Inc. v. Ziegler, No. 2D2024-1806, 2026 WL 2588976 (Fla. 2d DCA Sept. 2, 2026). Further, Florida treats seized property as the owner's, and the State holds it only as long as the investigation needs it. When no prosecution follows, courts retain authority to order it returned "to assist the true owner in the recovery of his property." Eight Hundred, Inc. v. State, 781 So. 2d 1187, 1191–1192 (Fla. 5th DCA 2001); Oleandi v. State, 731 So. 2d 4, 5–6 (Fla. 4th DCA 1999). Title passes to the agency only for "unclaimed" evidence, meaning property "to which no claim of ownership has been made." Watkins v. State, 230 So. 3d 1244, 1247–1248 (Fla. 3d DCA 2017). Mr. Ziegler has claimed this data continuously since March 2024. Florida conversion law also reaches "a wrongful taking over of intangible interests," In re Corbin's Est., 391 So. 2d 731, 732 (Fla. 3d DCA 1980), including digital assets. Taubenfeld v. Lasko, 324 So. 3d 529, 542–543 (Fla. 4th DCA 2021). The Second Amended Complaint alleges that Mr. Ziegler owns "[t]he data and information (not

merely the devices)," and that the City declined to return it after the investigation closed. Doc. 102 at ¶¶ 112, 127.

Nor did the unlawful seizure transfer ownership to the City. "Governmental seizure of property should be a temporary deprivation of use and possession, not a permanent transfer of title in the thing seized." United States v. Eight Automobiles With Fraudulently Obtained Ohio & New York State Div. of Motor Vehicle Titles, 356 F. Supp. 2d 223, 225 (E.D.N.Y. 2005). The government takes ownership only "pursuant to valid and lawful forfeiture proceedings," Jenkins v. United States, 71 F.4th 1367, 1374 n.4 (Fed. Cir. 2023); there was none here. Indeed, the owner's right to return does not depend on the seizure's lawfulness: "[l]awful seizure of the property, of itself, may affect the timing of the return, but never the owner's right to eventual return," and unlawfully seized property "must on motion be promptly returned unless it be contraband or statutorily forfeit." United States v. Goss-Jankowski, 669 F. Supp. 3d 1, 4 (D.D.C. 2023) (quoting Hubbard, 650 F.2d at 303).

Once criminal proceedings terminate, "the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property." United States v. Homrighausen, 327 F. App'x 124, 126 (11th Cir. 2008) (quoting United States v. Potes Ramirez, 260 F.3d 1310, 1314 (11th Cir. 2001) for the Rule 41(g) standard). That the warrants here are transparently unconstitutional only strengthens Mr. Ziegler's retained interest; it cannot vest ownership in the City.

Because the City never obtained a forfeiture and its investigative need ended on March 6, 2024, its continued retention does not defeat the property interest — it confirms it. The police power does not insulate the government from liability for a taking if the property is not returned after the government interest in retaining the property ceases. Jenkins, 71 F.4th at 1373–1374. Courts applying that principle have sustained Fifth Amendment takings claims at the pleading stage on materially similar facts. See Kelly v. Bell, No. 4:22-CV-01940, 2023 WL 3161643, at *3 (M.D. Pa. Apr. 28, 2023) (§ 1983 action; government's unjustified refusal to return seized property "sounds in the Fifth Amendment" and the takings claim may proceed); Pearsons v. United States, 723 F. Supp. 3d 825, 834 (C.D. Cal. 2024) (takings claim stated where law enforcement seized property under warrant and never returned it after the need ended).

The City's contention that data shared with a third-party platform is not the user's property does not withstand the very authority on which it rests. The City relies on the Supreme Court's decision in Chatrie v. United States, 609 U.S. 605 (2026), and on the Justices' disagreement there over whether data stored with a platform is the user's property. Although the majority declined to adopt a property-based Fourth Amendment test, that holding concerns searches, not whether data is property under the Takings Clause. Justice Gorsuch, concurring in the judgment, concluded that a user's legally grounded right to control his data — there, the contractual right to control Google Location History — supports a cognizable property interest. Chatrie, 609 U.S. at 647 (Gorsuch, J., concurring in the judgment). Mr. Ziegler's property interest

therefore does not turn on the third-party doctrine the City invokes, which measures reasonable expectations of privacy under the Fourth Amendment, not title or ownership under the Fifth. He alleges a legally grounded right to control and exclude others from the data taken from his cell phone, Google Drive, and Meta accounts — precisely the kind of interest Justice Gorsuch recognized. At most, Chatrie raises a question that cannot be resolved against him on a motion to dismiss.

*D. The Takings Clause supplies a direct cause of action.*

The Takings Clause is "self-executing"; a property owner "is automatically entitled to this relief as soon as they suffer a taking," and may recover just compensation from a local government under § 1983. See Knick v. Twp. of Scott, 588 U.S. 180, 192–94 (2019). Mr. Ziegler need not identify a statute authorizing the claim; the duty to pay is implied by the Amendment itself. *See id.* at 193–94. In theory, the seized data would have been returned by the City to Mr. Ziegler, without the City keeping any copies, once the investigation ended. Such action would have complied with the Fourth Amendment; one would hope this is what municipalities throughout Florida do in the ordinary course. The City instead kept and preserved the data solely in response to public records request – that's a taking.

*E. The City's "lawful retention" argument does not defeat the claim.*

The City contends it holds the data lawfully under this Court's preservation order and the Second District's public-records decision. That argument fails for two reasons. First, the preservation order requires the City to preserve the data *for this litigation*; it does not authorize the City to produce the data to the public, which is the

conduct pleaded as the taking. Second, a state-law records obligation cannot supply a "legitimate governmental purpose" that defeats a federal constitutional claim; as the Second Amended Complaint puts it, Florida's public-records laws "are neither a sword nor a shield vis-à-vis the United States Constitution." Doc. 102 ¶ 206. At most, the City raises a factual dispute about its purpose in retaining the data, and such a dispute cannot be resolved on a Rule 12(b)(6) motion, which "always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997).

**II. Count VII states a Fourteenth Amendment informational-privacy claim belonging to Mrs. Ziegler.**

*A. The confidentiality claim is Mrs. Ziegler's own and is not displaced by the Fourth Amendment.*

The City argues that the Fourth Amendment is the exclusive framework and that Mrs. Ziegler cannot assert her husband's search claim. That misunderstands the claim. The Fourteenth Amendment protects "an individual's interest in avoiding disclosure of certain personal matters" — the confidentiality strand of the right to privacy. See Padgett v. Donald, 401 F.3d 1273, 1280 (11th Cir. 2005). This Court already stated the governing rule: a plaintiff "sufficiently alleges a Fourteenth Amendment privacy violation when she alleges that a state official shared with other individuals private, confidential details about her intimate life." Doc. 96 at 16. That is Mrs. Ziegler's own injury, not a borrowed Fourth Amendment claim — so the personal-standing limitation of the Fourth Amendment does not apply to it.

The more-specific-provision rule does not bar this claim. That rule channels a claim to the amendment that provides "an explicit textual source of constitutional protection" against the challenged conduct. It foreclosed the substantive-due-process claim in Tinney only because the Fourth Amendment governed the seizure at issue there. See Tinney v. Shores, 77 F.3d 378, 381 (11th Cir. 1996). But the Fourth Amendment does not address the confidentiality injury here — the City's disclosure of intimate information. Mrs. Ziegler's confidentiality and privacy claim turns on the disclosure, not the acquisition: it lies "even if the information was properly obtained." See Fadjo v. Coon, 633 F.2d 1172, 1175 (5th Cir. 1981).

*B. The Second Amended Complaint pleads an actual, improper disclosure.*

The Court dismissed the prior count because it alleged only that the City "caused or permitted" disclosure — a statement that the public "might" access the material, not that the City "actually disclosed" it. Doc. 96 at 14, 16. The Second Amended Complaint now alleges actual, intentional disclosure. The City "intentionally disseminated material about Mrs. Ziegler's intimate life" and "disclosed and disseminated to the public" her intimate marital communications, photographs, videos, and messages; disseminated personal information "not included in official police reports or as part of any official investigation" to "unauthorized" persons; and did so to named recipients — "City communications about Mrs. Ziegler to Peter Schorsch" and "to Michael Barfield". Doc. 102 at ¶¶ 194, 200, 202-203.

These allegations satisfy the governing standard. In the controlling authority, a Fourteenth Amendment privacy violation was adequately alleged where state officials

shared intimate information with others — a transcript of private details in Fadjo, and a sexual video shown to other officers in James v. City of Douglas, Ga., 941 F.2d 1539, 1544 (11th Cir. 1991). The Eleventh Circuit squarely rejected the argument that the claim requires disclosure to the general public: "a state official may not disclose intimate personal information … unless the government demonstrates a legitimate state interest in disclosure which is found to outweigh the threat to the individual's privacy interest," and that inquiry "does not depend upon whether the person to whom disclosure was made is a state official or a member of the general public." *Id.* Internal disclosure within the government counts as well.

*C. The disclosures are severable from any investigative act.*

The Court's prior concern was that reviewing, retaining, and documenting seized data in police reports is "a facet of conducting a search or seizure," not a distinct violation. Doc. 96 at 11-12. The Second Amended Complaint draws the line the Court identified. It alleges disclosure of material "not included in official police reports or as part of any official investigation"— conduct that cannot be characterized as investigative. Doc. 102 at ¶¶ 202. Disclosing intimate marital content to members of the press is not report-writing.

Nor can the City claim a legitimate purpose. Because a constitutional right is at stake, "more than mere rationality must be demonstrated" to justify the intrusion, and the government bears the burden to show a legitimate interest that outweighs the privacy threat. See Fadjo v. Coon, 633 F.2d 1172, 1176 (5th Cir. 1981). The Second Amended Complaint alleges the materials "had no evidentiary value" and that the

City knew Mrs. Ziegler "was not suspected of any crime and that the materials were unrelated to the investigation." Doc. 102 at ¶¶ 194, 198. The disclosure of such intimate personal information is categorically different from the publication of an official act such as an arrest; it lies at the heart of the confidentiality right. *See* Fadjo, 633 F.2d at 1176.

*III. The Second Amended Complaint adequately pleads municipal liability.*

The City's Monell argument fails under the governing pleading standard. A plaintiff need only "allege a policy, practice, or custom of the City which caused" the injury, including a longstanding practice that is the City's standard operating procedure. Hoefling, 811 F.3d at 1279–80.

The Second Amended Complaint alleges the City has "no policy or procedure for returning seized electronic data to its owner once an investigation closes," and that "its practice is to retain seized material indefinitely unless and until a court orders its return"; and that the City "has no policy or procedures in place to segregate or otherwise avoid reviewing privileged marital communications," while maintaining a "policy and practice to review" them. Doc. 102 at ¶¶ 124, 195. That is materially the same policy-of-inaction theory the Eleventh Circuit sustained in Hoefling, where the complaint alleged a "policy, custom, and/or practice" of failing to follow established safeguards. 811 F.3d at 1280–1281.

The City argues that these policies concern how data is obtained and reviewed, not how it is disclosed. That misreads the causal chain the Second Amended Complaint alleges. A municipality is liable when its own deliberate conduct is the

"moving force" behind the injury and there is "a direct causal link" between the municipal action and the deprivation. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). The City's practices of retaining seized data indefinitely and never segregating privileged marital communications supply that link. Doc. 102 at ¶¶ 124, 195. The failure to segregate is a choice: the City's detectives do segregate attorney-client communications. Doc. 102 at ¶ 196. Taken together, these practices meant that Mrs. Ziegler's intimate, non-evidentiary marital material was never separated from the investigative file, never returned, and never destroyed. Instead, it remained in the City's possession indefinitely after the investigation closed, available for the very disclosures Count VII alleges. That release was no aberration; it was the predictable and foreseeable result of a practice of seizing everything, keeping everything, separating nothing, and returning nothing.

To the extent the claim sounds in failure to train or supervise, the deliberate-indifference requirement is satisfied here. A pattern of similar violations is "ordinarily necessary" to show deliberate indifference, but it is not always required. See Connick v. Thompson, 563 U.S. 51, 62 (2011). The Supreme Court has expressly preserved municipal liability where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 & n.10 (1989). That exception applies where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring

situations." Bryan Cnty., 520 U.S. at 409; *accord* Connick, 563 U.S. at 63–64 (unconstitutional consequences may be "so patently obvious" that a city is liable "without proof of a pre-existing pattern of violations"). The Eleventh Circuit applies the same single-incident framework. Gold v. City of Miami, 151 F.3d 1346, 1351–52 (11th Cir. 1998). Given the overbroad search alleged here — which this Court has already found adequately plead in sustaining Mr. Ziegler's Fourth Amendment claims against the detectives — the exposure of intimate, non-evidentiary marital data was the predictable consequence of the City's lack of any protocol to segregate or return seized data. See Bryan Cnty., 520 U.S. at 409; see also City of Canton, 489 U.S. at 390 (need to train can be "so obvious" that failure constitutes deliberate indifference). Put simpler, a municipality that has a policy of executing cell phone search warrants without any limitation whatsoever

*IV. Any dismissal should be without prejudice.*

The City asks the Court to dismiss with prejudice. That is unwarranted. The Second Amended Complaint cured the specific gaps the Court identified. If the Court finds any allegation still wanting, the remedy is leave to amend, because any remaining defect - further specification of the produced files or disclosed content - is concrete and curable, not futile. Dismissal of Count III with prejudice would be especially inappropriate now: the Eleventh Circuit has vacated the panel decision in Fulton and granted rehearing en banc, so the governing law in this Circuit is unsettled. Fulton v. Fulton Cnty. Bd. of Comm'rs, 148 F.4th 1224 (11th Cir. 2025), vacated and reh'g en banc granted, 174 F.4th 1350 (11th Cir. 2026)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the City of Sarasota's Motion to Dismiss Counts III and VII of the Second Amended Complaint. In the alternative, Plaintiffs request leave to amend.

Respectfully submitted,
/s/ Steven N. Gosney
Steven N. Gosney, Esq.
Florida Bar 0180830
Matthew Sarelson, Esq.
Florida Bar 888281
**SARELSON & SAJDERA, PLLC**
*Counsel for Plaintiffs Christian Ziegler and Bridget Ziegler*
1601 Forum Place, Suite 202
West Palm Beach, Florida 33401
Phone: 561-948-4000
Steve.gosney@ssxlaw.com
Matt.sarelson@ssxlaw.com
Coral.sotomayor@ssxlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, I served this document via the Court's CM/ECF system on all counsel of record.

/s/ Steven N. Gosney

Steven N. Gosney, Esq.